**UNITED STATES of America**

**v.**

**OFCHINICK, Daniel R. (Jr.).**

**Appeal of Daniel OFCHINICK, Jr.**

**No. 89–3008.**

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit Rule 12(6)
May 30, 1989.

Decided June 7, 1989.

Bruce A. Antkowiak and Antkowiak and DeBernardinis, Greensburg, Pa., for appellant.

Charles D. Sheehy, Acting U.S. Atty. and Bonnie R. Schlueter, Asst. U.S. Atty., Pittsburgh, Pa., for appellee.

Before HIGGINBOTHAM, GREENBERG and HUTCHINSON, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

Daniel R. Ofchinick, Jr. appeals from a judgment of sentence imposed under the sentencing guidelines following his guilty plea to an indictment charging him with escape contrary to 18 U.S.C. § 751(a). His appeal implicates application of the guidelines by the district court.

The circumstances of his escape and apprehension are as follows. On June 9, 1988, Ofchinick was sentenced to a five year custodial term for mail fraud and related offenses and was required to make restitution to the victim of $3,998,625.54. He was, however, permitted to self-report to the Federal Correctional Institution, Loretto, Pennsylvania, which he did on July 6, 1988. On July 27, 1988, he escaped and he remained at large until September 24, 1988, when he was arrested at Denver, Colorado. Before he was recaptured, he made several contacts with a United States Attorney's Office to arrange for a voluntary return but he never surrendered, though there was no legitimate reason why he could not have done so.

On August 4, 1988, he was indicted for escape. On October 12, 1988, Ofchinick pleaded not guilty to the indictment but on November 18, 1988, without a plea agreement, he changed his plea to guilty.

Ofchinick's offense level computation in the presentence report was the base offense level, 13, for violation of 18 U.S.C. § 751(a) in guideline § 2P1.1(a)(1), with no adjustments. His criminal history category was III, computed as follows. He received 3 points under guideline § 4A1.1(a) for the sentence of imprisonment for the mail fraud and related offenses. There were 2 points added under guideline § 4A1.1(d) as he was under the criminal justice sentence of imprisonment when he escaped and 1 point was added under guideline § 4A1.1(e) as he was in confinement when he escaped. The total of 6

points put Ofchinick in criminal history category III. Predicated on this criminal history category and his total offense level of 13, the guidelines range was 18 to 24 months which, under guideline § 5G1.3, was to run consecutively to the sentence he was already serving. The presentence report identified no factors justifying departure from the guidelines.

Ofchinick submitted objections to the report which were noted in an addendum to it. He contended that his total offense level should have been reduced by 2 levels to 11 for acceptance of responsibility, as "at various times during his flight" he "made efforts to arrange for his surrender" and that "immediately upon his capture" he "sought to arrange to enter his plea [of guilty]." He also contended that the increase of 3 points in his criminal history category computation violated the due process clause of the Fifth Amendment and was "without foundation in the law or common sense." He urged that the base offense level necessarily took into account the fact that he was in custody, as that was an element of the offense of escape, so that his status was counted twice when points were added in computing his criminal history category because he was under a sentence of imprisonment and was in confinement.

On December 19, 1988, the district court filed its "tentative findings and rulings concerning disputed facts or factors" and rejected Ofchinick's contentions. It pointed out that under guideline § 3E1.1(a) a defendant could obtain a 2 level reduction in the offense level if he "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." It then indicated that it was appropriate for the court to consider the factors set forth in application note 1 to guideline § 3E1.1. It said that the keynote to the provision is the "sincerity of the defendant's remorse" and that it was not convinced Ofchinick was remorseful. While the court acknowledged that Ofchinick pleaded guilty promptly and cooperated

with the authorities by telling them what occurred, it was not tremendously impressed with this as he had little to tell and the government had a strong case. The court also observed that Ofchinick did not voluntarily surrender, though he had contacted the government while at large offering to cooperate.

The court held that 2 points were properly added to the criminal history category computation as Ofchinick escaped while under the criminal justice sentence of imprisonment, guideline § 4A1.1(d), thus rejecting Ofchinick's contention that his status as a prisoner was double counted by being considered in both the base offense level and the criminal history category. It pointed out that the Sentencing Commission, in setting forth the method for computing the criminal history category, did not exclude from consideration a criminal justice sentence being served when the defendant committed the offense for which he was being sentenced, even though his being in custody was an element of the offense. It also found, citing *United States v. Goodface*, 835 F.2d 1233, 1236 (8th Cir.1987), that Ofchinick was not denied due process of law by the computation of the criminal history category.

The court determined that 1 point was properly added under guideline § 4A1.1(e), which provides for that addition if the defendant committed the new offense "less than two years after release from imprisonment on a sentence counted" under guideline § 4A1.1(a).[1] This was, however, troublesome as Ofchinick obviously escaped before he was released. Nevertheless, the court justified the 1 point increase because application note 5 to guideline § 4A1.1 provides that guideline § 4A1.1(e) applies "if the defendant committed the instant offense while still in confinement on such a sentence." The court indicated that while ordinarily a court will not refer to legislative history in construing a statute which is clear on its face, citing *United States v. Oregon*, 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961), circumstances

---

1. In fact, it provides for 2 points to be added in that circumstance but this is reduced to 1 point

in cases such as this in which 2 points are added under guideline § 4A1.1(d).

may exist in which a literal reading of a statute conflicts with clear contrary evidence of legislative intent, citing *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). Thus, it said that a court "may use available aids to construction no matter how clear a statute may appear on first inspection," quoting *Brigham v. United States*, 539 F.2d 1312, 1316 n. 8 (3d Cir.1976). Accordingly, the court followed the application note and added the point.[2]

Ofchinick filed objections to the tentative findings but the court adopted the tentative findings on December 22, 1988, and sentenced Ofchinick to a custodial term of 21 months to be served consecutively to the sentence on the mail fraud and related counts, to be followed by a three year term of supervised release. Ofchinick has appealed from the judgment of sentence, raising essentially the same issues he advanced in the district court.

The government in its brief sets forth that the standard of review of Ofchinick's claim for a 2 level reduction in the offense level for acceptance of responsibility in guideline § 3E1.1, is whether the factual findings of the district court were clearly erroneous, a conclusion it predicates on 18 U.S.C. § 3742(e) (formerly (d)), which provides that the "court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." *See United States v. Franco–Torres*, 869 F.2d 797, 799

(5th Cir.1989); *United States v. Spraggins*, 868 F.2d 1541, 1543 (11th Cir.1989). Ofchinick agrees in his brief that findings of fact are reviewed "under the clearly erroneous standard."

Here, however, the basic historical facts undergirding Ofchinick's claim for the 2 level reduction are not in dispute and, inasmuch as there was no testimony from any witness, it is difficult to consider the court's conclusions as being based on its assessment of "the credibility of witnesses." *See United States v. Gambino*, 864 F.2d 1064, 1071 n. 3 (3d Cir.1988). Furthermore, there is some question as to whether the clearly erroneous standard applies in view of the amendment to 18 U.S.C. § 3742(d), now (e), in 1988, which requires that a court of appeals "give due deference" to the district court's application of the facts to the guidelines. *See* Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, § 7103, 102 Stat. 4181, 4417 (1988). In the circumstances of this case, we might reasonably infer that to give due deference to the district court's decision which was based on essentially undisputed historical facts, we should use an abuse of discretion standard.[3] We observe, however, that in *United States v. Mejia–Orosco*, 868 F.2d 807 (5th Cir.1989), the court in considering the meaning of "due deference" in the 1988 amendment concluded, at least on the facts before it, that Congress only reinforced the clearly erroneous standard and reminded the courts of appeal to defer to the district courts.

■ As a practical matter, however, the outcome of this appeal is not dependent on which of the foregoing standards of review we apply, as under either we cannot con-

---

**2.** Ofchinick also urged that the guidelines were unconstitutional but in view of *Mistretta v. United States*, —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), the court rejected that contention. In addition, he contended that there should be a downward departure in the offense level but the court rejected that contention and Ofchinick does not press it on this appeal.

**3.** While Ofchinick sets forth in his brief that our standard of review for factual findings is whether the findings were clearly erroneous, in his argument in his brief he contends that the district court erred "as a matter of law" in not

allowing a 2 level offense level reduction under guideline § 3E1.1. We, however, reject this contention as we do not exercise plenary review on this issue which does not involve construction of the guidelines but rather requires us to review either findings of fact or the exercise of discretion. *See United States v. Uca*, 867 F.2d 783, 786 (3d Cir.1989); *United States v. Ryan*, 866 F.2d 604, 610 (3d Cir.1989). We point out, however, that even if we applied a plenary standard of review, we would not allow the 2 level reduction.

clude that the district court erred in its conclusions. Under guideline § 3E1.1, a 2 level reduction is available if "the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." A defendant is not, however, entitled to the reduction as a matter of right simply because he pleads guilty, *see* guideline § 3E1.1, though a guilty plea "may provide some evidence of the defendant's acceptance of responsibility." *See* application note 3 to guideline § 3E1.1.

■ The application notes to guideline § 3E1.1 provide a noninclusive list of appropriate considerations to determine if a defendant qualifies for the reduction but do not attempt to rate the significance of the factors by suggesting that one or more may dominate. Thus, it is evident that a conclusion as to whether a defendant "clearly demonstrates" his acceptance of responsibility can only be reached on a case-by-case basis. One of the considerations set forth in the application notes is whether the defendant voluntarily surrendered to authorities promptly after commission of the offense. Here the lack of a voluntary surrender was particularly significant because of the nature of the offense. While we do not suggest that a person guilty of escape under 18 U.S.C. § 751(a) commits a continuing offense under that section by remaining at large, it is obvious that the public suffers an ongoing harm so long as a person who should be in confinement is free, for the judgment of sentence imposed by the court for the underlying offense is continuously flouted. Thus, in an escape case a defendant by surrendering, though not wiping out the offense, will to some degree reverse its consequences.

■ We recognize, of course, that it is in the public interest when other criminals, such as bank robbers, surrender. But in these other criminal cases, the injury

caused by the crimes comes from the commission of offenses not including an escape from custody as an element, so that the act of surrendering in itself will not reverse the consequences of the offense.[4] Thus, while we do not suggest that in any criminal case a determination of whether there was a voluntary surrender is not significant in deciding whether a defendant accepts personal responsibility for his criminal conduct, a voluntary surrender by a defendant is particularly important in an escape case for these purposes.

■ Here Ofchinick, though recognizing his obligation to surrender, did not do so. Rather, he attempted to negotiate with the government to give it something to which it was unconditionally entitled, his return to custody. His actions were inconsistent with the acceptance of responsibility for his criminal conduct. Indeed, in the circumstances of this case the only basis for a 2 level reduction could be a per se rule that it is automatically awarded after a plea of guilty. But the Commission has precluded that. In the circumstances we are satisfied that the district court did not err in concluding that Ofchinick did not clearly demonstrate his acceptance of responsibility.[5]

■ We next consider Ofchinick's contention that the district court erred in the computation of his criminal history category by adding 2 points since he escaped while under the criminal justice sentence of imprisonment, guideline § 4A1.1(d), even though an element of the offense of escape was that he be in custody. He predicates this challenge on his construction of the guidelines and the due process clause of the Fifth Amendment. Our review on this guidelines construction issue is plenary. *United States v. Uca,* 867 F.2d 783, 786 (3d Cir.1989); *United States v. Ryan,* 866 F.2d 604, 610 (3d Cir.1989).

We reject this contention. While it is true that only a person in custody may escape, obviously persons in custody can commit crimes which can be committed by

---

4. Of course, depending upon what crimes are involved, other defendants may in part reverse the consequence of their crimes by other actions such as returning any money or property taken.

5. We are aware of Ofchinick's reasons for staying at large as set forth in the confidential materials supplied to us. While we do not describe them, we have considered them and they do not change our result.

other persons as well. For example, an inmate or a visitor can assault a prison guard. *See* 18 U.S.C. §§ 111, 1114. If such an assault is committed by an inmate, it could not reasonably be urged that the sentence he was serving at that time be excluded in the computation of his criminal history category, as the defendant's status as an inmate would not be an element of the offense and thus could not have been reflected in the applicable guideline, § 2A2.2.

The same thing is true under guideline § 2P1.1(a)(1). That guideline includes offenses for instituting or assisting escapes as well as for an escape itself and sets a base offense level at 13. Inasmuch as persons not in custody may be sentenced under the guideline, it is inconceivable that the Sentencing Commission intended the establishment of a base offense level therein to impact on the computation of the criminal history category. A contrary ruling would mean that an inmate who escaped, whose only criminal history was the offense for which he was in custody when he escaped, would be subject to the same sentencing range as a person who had no criminal history and assisted an inmate to escape. We refuse to construe the guidelines to reach such an absurd result.[6] *See United States v. Huff*, 873 F.2d 709, 714 (3d Cir.1989). Thus, as the Court of Appeals for the Fifth Circuit said in *United States v. Reyes–Ruiz*, 868 F.2d 698, 700 (1989), "[t]he defendant's criminal history is calculated independently of the offense level."

We also point out that there is no suggestion in guideline § 4A1.2, which provides for exclusion of certain prior sentences in the computation of the criminal history category, that a sentence should be excluded in the circumstances present here.

Furthermore, the application notes to guideline § 4A1.1, though indicating that certain sentences are not counted in computing the criminal history category, make no reference to a situation such as that here. The inference we draw from this, though not conclusive, is that sentences not excluded are to be included. On this issue we finally note that in *United States v. Jimenez*, 708 F.Supp. 964 (S.D.Ind.1989), to be reported at 708 F.Supp. 964, the court rejected an argument identical to that made by Ofchinick.

We cannot regard Ofchinick's Fifth Amendment contention that the guidelines are both vague and arbitrary as substantial. We conclude that inasmuch as they were applied as written, they gave Ofchinick fair notice of the punishment he faced. Furthermore, there is nothing arbitrary or unreasonable about treating a person who commits an offense while under a criminal justice sentence of imprisonment more severely than an offender who commits an offense of equal severity who is not under such a sentence.[7]

■ Ofchinick's final contention is that it was unlawful to add 1 point under guideline § 4A1.1(e), which provides that 1 point shall be added "if the defendant committed the instant offense less than two years after release from imprisonment." [8] In his view, guideline § 4A1.1(e) cannot be applicable unless he has been released before he committed the offense. Our review on this issue is plenary.

Unquestionably the language of the guideline supports his interpretation. However, application note 5 to guideline § 4A1.1 indicates that guideline § 4A1.1(e) "applies if the defendant committed the instant offense while still in confinement on such a sentence." Guideline § 1B1.7 provides that the commentary, which in-

---

6. We hasten to add that we do not imply that if a guideline could be applied only to a person in custody, if there is any such guideline, our result would different. Inasmuch as guideline § 2P1.1(a)(1) applies whether or not the defendant is serving a criminal justice sentence of imprisonment, we are not concerned with a guideline which can be applied only to a person who commits an offense in custody.

7. Ofchinick, in his objections to the district court's tentative findings and in his brief on this appeal, has also advanced an Eighth Amendment claim based on a proportionality analysis under *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). It clearly has no merit and requires no discussion.

8. As above set forth in footnote 1 at page 5 of the typescript, in some circumstances 2 points are added under guideline § 4A1.1(e).

cludes the application notes, may be used to "interpret the guideline or explain how it is to be applied." Thus, there is no question but that the computation of Ofchinick's criminal history category was consistent with the intent of the Sentencing Commission.

Thus, while we recognize the inconsistency between the guideline and the note, we do not see how we cannot follow the note, as the Sentencing Commission issued both the guidelines and the commentary in its official Guidelines Manual. This is not the usual case in which we are asked to accept legislative history such as committee reports, or even testimony of a witness before a committee, to determine the intent of Congress as a whole.[9]

The judgment of sentence of December 22, 1988, will be affirmed.[10]

---

**9.** While not critical to our outcome, we point out that a proposed amendment to guideline § 4A1.1(e) supports our result. The Sentencing Commission pursuant to 28 U.S.C. § 994(p) has reported an amendment to the guideline to the Congress intended to be effective on November 1, 1989, which adds the words "or while in imprisonment or escape status on such a sentence" at the end of the first sentence of the guideline. The second sentence of application note 5 is to be amended by deleting "still in confinement" and inserting in lieu thereof "in imprisonment or escape status." The Sentencing Commission has indicated that the reason for the amendment "is to clarify that subsection (e) applies to defendants who are still in confinement status at the time of the instant offense (*e.g.,* a defendant who commits the instant offense while in prison or on escape status)." Inasmuch as the amendment to the guideline is intended to clarify the existing guideline, we may give it substantial weight in determining the meaning of the existing guideline. *See Barnes v. Cohen,* 749 F.2d 1009, 1015 (3d Cir. 1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985).

**10.** Judge Higginbotham concurs in the result.